IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING: (1) THE USE OF A PEN REGISTER DEVICE AND TRAP AND TRACE DEVICE; AND (2) THE ACQUISITION OF CELL SITE INFORMATION FOR TELEPHONE NUMBER 281-905-1739 | No. 14-PR-3035 CPR<br><br>(UNDER SEAL) |

## APPLICATION

Gary Milligan, Assistant United States Attorney, Western District of Missouri, (hereinafter "Applicant") hereby applies to the Court pursuant to 18 U.S.C. §§ 3122, 3123 and 2703(d) for an order (1) authorizing the installation and use of a pen register and a trap and trace device (hereinafter "Pen/Trap") on cellular telephone bearing number 281-905-1739 (hereinafter the "Target Telephone") and (2) authorizing disclosure of subscriber information, including the location of cellular towers (cell-site and sector/face) related to the use of the Target Telephone (hereafter "cell-site information"). In support of this application, I state the following:

1. Applicant is an "attorney for the Government," as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. §§ 3122 and 2703(d), may apply for an order authorizing the installation and use of a Pen/Trap and acquisition of cell-site information.

2. By this application, the Government seeks an order authorizing (A) the installation and use of a Pen/Trap on the Target Telephone and (B) the acquisition of subscriber information and cell-site information related to the use of the Target Telephone. The requested

information does not include GPS data, tower triangulation records or E-911 Phase II location information.

## (A) PEN/TRAP

3. Pursuant to 18 U.S.C. § 3123(a)(1), upon an application made under 18 U.S.C. §3122(a)(1) a court "shall enter an ex parte order authorizing the installation and use of a Pen/Trap anywhere within the United States, if the court finds that the attorney for the Government has certified to the court the information likely to be obtained by such installation and use is relevant to an ongoing investigation."

4. Installation and use of a pen register will record or decode dialing, routing, addressing, or signaling information transmitted from the Target Telephone. The information transmitted from the Target Telephone will include information dialing, routing, addressing, or signaling information for "push-to-talk" communications if the cellular device is push-to-talk capable and will include dialing, routing, addressing, or signaling information for text messaging communications if the cellular device is text messaging capable. The information will also include records regarding the date, time and duration of calls created by such incoming impulses, for a period of sixty days.

5. Installation and use of a trap and trace device on the Target Telephone will capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the sources of wire or electronic communications. The information transmitted from the Target Telephone will include information dialing, routing, addressing, or signaling information for "push-to-talk" communications if the cellular device is push-to-talk capable and will include

dialing, routing, addressing, or signaling information for text messaging communications if the cellular device is text messaging capable. The information will also include records regarding the date, time and duration of calls created by such incoming impulses, for a period of sixty days.

## (B) SUBSCRIBER AND CELL-SITE INFORMATION

6. Pursuant to 18 U.S.C. § 2703(d), a court may order an electronic communication service to disclose non-content information about a customer or subscriber if the Government "offers specific and articulable facts showing that there are reasonable grounds to believe that the .... records or other information sought are .... relevant and material to an ongoing criminal investigation."

7. Cellular telephone companies routinely create and maintain, in the regular course of their business, records of information concerning their customers' usage. These records typically include for each communication a customer makes or receives (1) the date and time of the communication ; (2) the telephone numbers involved; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication ; and (5) the duration of the communication. The records may also, but do not always, specify a particular sector of a cell tower used to transmit a communication.[1] Cell-site information is useful to law enforcement because of the limited information it provides about the general location of a cell phone when a communication is made. As one court has explained:

---

[1] Cell towers are often divided into three 120° sectors, with separate antennas for each of the three sectors. To the extent this information does exist in a particular instance, it does not provide precise information regarding the location of the cell phone at the time of the communication, but instead shows only in which of the three 120°, pie-shaped sectors the phone was probably located.

3

> The information does not provide a "virtual map" of the user's location. The information does not pinpoint a user's location within a building. Instead, it only identifies a nearby cell tower and, for some carriers, a 120-degree face of that tower. These towers can be up to 10 or more miles apart in rural areas and may be up to a half-mile or more apart even in urban areas.

*In re Application of United States for an order for Disclosure of Telecommunications Records,* 405 F. Supp. 2d 435, 449 (S.D.N.Y. 2005) (citation omitted).

8. Applicant certifies the Drug Enforcement Administration is conducting a criminal investigation of "Diego," and others as yet unknown, in connection with possible violations of 21 U.S.C. §§ 841(a)(1) and 846, that is, distribution, possession with the intent to distribute, and conspiracy to distribute controlled substances. It is believed one or more of the subjects of the investigation are using the Target Telephone, a mobile cellular device issued by Sprint Corporation, subscribed to by Louis GONZALAS, P. O. Box 54988, Irvine California (Sprint Corporation's address), and used by "Diego" in furtherance of the subject offenses.

In further support of this application, Gary Milligan, Assistant United States Attorney, certifies that the information likely to be obtained from the pen register and trap and trace device is relevant to the ongoing criminal investigation being conducted by the Drug Enforcement Administration (DEA).

### (C) SPECIFIC ARTICULABLE FACTS

9. In support of its request for an order under 18 U.S.C. § 2703(d) directing the furnishing of subscriber and cell-site information, and based upon discussions with DEA Task Force Officer (TFO) Daniel P. Banasik, Applicant sets forth the following specific and

articulable facts showing there are reasonable grounds to believe the Pen/Trap and cell-site information sought is relevant and material to an ongoing criminal investigation:

  a. On March 22, 2014, the Missouri State Highway Patrol received information from the Lawrence County Sheriff's Office of an armed robbery occurring near Halltown, Missouri. The alleged victim, Melody W. Carpenter, of Springfield, Missouri, indicated the suspects left in a white Chevrolet Tahoe. Missouri State Highway Patrol Officers, Corporal Roger A. Meyers and Corporal Steven A. Donnell, located the vehicle, a white 1999 Chevrolet Tahoe, bearing Missouri registration DK2-A2Z, on I-44 at US 160. After the vehicle refused to stop, the Highway Patrol Officers initiated a pursuit. Missouri State Highway Patrolman Trooper Thomas J. Stevens joined in the pursuit. The pursuit ended in a yard in the 1800 block of Farm Road 101, Willard, Missouri. Both occupants fled but were immediately apprehended. The driver and registered owner of the vehicle was identified as Rodrick E. Herbert, and the passenger of the vehicle was identified as Kelly M. Green, also known as Kelly M. Prochaska. Missouri Department of Revenue indicated the aforementioned license is registered to Rodrick Herbert, TOD (Transfer of Death) to Kelly Green on a 1999 Chevrolet Tahoe.

  b. Located underneath the driver's seat were two cellophane and duct tape wrapped bundles of suspected cocaine joined together by duct tape. A roll of duct tape was located in a driver's door compartment, and discarded packaging, similar to that used to transport a kilogram brick of cocaine, was located on the passenger backseat floorboard. Drug paraphilia, several cellular telephones, and personal clothing were also located throughout the vehicle.

5

c. On March 22, 2014, Kelly M. Green was interviewed by law enforcement at Cox South Hospital in Springfield, Missouri. It was later determined she was not being totally honest during this interview. On March 23, 2014, Kelly M. Green was again interviewed. Before initiating the second interview, Green was read her Constitutional *Miranda* rights, and Green indicated that she understood her rights and waived them.

d. Green admitted not being totally truthful in her first interview. Green then stated that Herbert (the driver of the vehicle she was riding in on March 22, 2014) knew he was wanted and planned to turn himself into law enforcement, but wished to see his relatives before doing so. On Monday, March 17, 2014, Herbert and Green left for Galveston, Texas so Herbert allegedly could visit his mother and grandmother. After leaving Galveston, Texas, Herbert told Green he wished to visit a friend in Rosenberg, Texas. Herbert identified the friend only as "Diego."

e. Green stated they met "Diego" at the Plantation Inn on or about Thursday, March 20, 2014, and left Friday, March 21, 2014. When they arrived at the Plantation Inn, a white female, later identified as Melody W. Carpenter, was with "Diego." Green stated she was told Carpenter had been stranded in Rosenberg, Texas, and needed a ride back to Springfield, Missouri. Herbert agreed to give Carpenter a ride. Green stated she had never met Carpenter or "Diego" before. After leaving Rosenberg, Texas, Green stated it became apparent they were transporting cocaine back to Springfield, Missouri, because Herbert, utilizing his telephone, began negotiating with a subject in Springfield

6

and Carpenter about the price of a kilogram of cocaine. Green also stated while staying at a motel in Oklahoma she observed the kilogram of cocaine.

f.  Carpenter was also interviewed and, although her account differed somewhat from Green's account, she also admitted to the presence of cocaine in the vehicle. Carpenter stated she had driven to the Houston, Texas area with a person named Robert Snow and an individual know only to Carpenter as "Diego" on or around March 17, 2014. Carpenter stated "Diego" was a known methamphetamine and marijuana transporter and distributor living in the Springfield, Missouri and Houston, Texas areas. According to Carpenter, they stayed in a hotel in Rosenberg, Texas. On or around Thursday, March 20, 2014, Kelly Green and Rodrick Herbert arrived.

g.  Carpenter stated it appeared to her that Green had arranged a kilogram cocaine transaction between Herbert and "Diego." On Friday, March 21, 2014, Herbert, Green, and Carpenter left Rosenberg, Texas heading to Springfield, Missouri. "Diego" arranged for Carpenter to ride back to Springfield with Herbert and Green to safeguard the cocaine. However, prior to arriving in Springfield and prior to the stop by the Missouri State Highway Patrol, Carpenter was left near Halltown, Missouri.

h.  On April 8, 2014, Carpenter (now a Missouri State Highway Patrol Informant), informed TFO Banasik she had been contacted by "Diego." "Diego" informed Carpenter he was anticipating transporting six "birds" (a code word for kilogram) of methamphetamine to Springfield, Missouri from Houston, Texas or Atlanta, Georgia. "Diego" would place the methamphetamine in a load vehicle and follow the load vehicle to Springfield, Missouri.

7

i. Once in Springfield, "Diego" intended to distribute the methamphetamine. Carpenter indicated "Diego" has a brother living in Springfield, Missouri and intended on staying with him.

j. On April 9, 2014, Carpenter placed a recorded telephone call to "Diego," via the Target Telephone (cellular telephone number 281-905-1739). During the ensuing conversation, "Diego" indicated the methamphetamine was stuck in Mississippi and he was unsure when it would be delivered. "Diego" also indicated he might only be receiving two kilograms of methamphetamine and tentatively agreed to sell Carpenter one of them.

k. Phone records obtained by the DEA indicate that the Target Telephone is still in use.

10. In accordance with Title 18 U.S.C. § 3121(c), Applicant has informed the Drug Enforcement Administration it shall use technology reasonably available to it to restrict the recording or decoding of electronic or other impulses to the dialing, routing, addressing and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communication.

11. Based upon the above facts, and pursuant to 18 U.S.C. §§ 3127, 2703(c)(1)(B), 2703(c)(2), and 2703(d), because there are reasonable grounds to believe such information is relevant and material to an ongoing criminal investigation, Applicant requests Sprint Corporation, and any other person or entity providing wire or electronic communications service in the United States whose assistance may facilitate the execution of the order, be ordered to supply the following subscriber information: (A) name; (B) address; (C) the billing names and

addresses (if different); (D) means and source of payment for such service (including any credit card or bank account number); (E) historical call detail records for the period beginning on March 29, 2014, until the date of this Court's order, (F) historical cell site records for the period beginning on March 29, 2014, until the date of this Court's order; and (G) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address of a subscriber, for published, non-published, or unlisted dialing, routing, addressing, or signaling information captured by the pen register on the Target Telephone, and for published, non-published, or unlisted dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the Target Telephone as captured by the trap and trace device on the Target Telephone, upon oral or written demand by agents of the Drug Enforcement Administration.

12. Based upon the above facts, and pursuant to 18 U.S.C. §§ 3127, 2703(c)(1)(B), 2703(c)(2), and 2703(d), because there are reasonable grounds to believe such information is relevant and material to an ongoing criminal investigation, Applicant requests Sprint Corporation, and any other person or entity providing wire or electronic communications service in the United States whose assistance may facilitate the execution of the order, be ordered to supply the cell- site information for the Target Telephone, at call inception and call termination, including the physical address of the cellular tower, upon oral or written request of agents of the Drug Enforcement Administration. This request should specifically preclude Sprint Corporation from initiating any signals to the Target Telephone to determine the cell site location for the Target Telephone and limit the information to cell site information kept in the ordinary course of retaining subscriber information.

13. Because the assistance of Sprint Corporation will be necessary to accomplish the objectives of the requested order, Applicant further requests the order direct upon service of the order upon it, Sprint Corporation furnish information, facilities, and technical assistance necessary to accomplish the installation of the Pen/Trap, including installation and operation of the devices unobtrusively and with a minimum of disruption of normal service. Sprint Corporation shall be compensated by Drug Enforcement Administration for reasonable expenses incurred in providing such facilities and assistance in furtherance of the order.

14. It is further requested this authorization for the installation and use of a pen register device and trap and trace device applies not only to the telephone number listed above for the Target Telephone, but also to any changed telephone number(s) subsequently assigned to an instrument bearing the same cellular device as the Target Telephone, or any changed cellular device subsequently assigned to the same telephone number as the Target Telephone, or any additional changed telephone number(s) and/or cellular device(s), whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the Target Telephone within the period authorized by this order.

15. Applicant further requests the Court direct the local, long distance, and wireless carriers listed in the order, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate the execution of the order, to notify special agents of the Drug Enforcement Administration, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the Target Telephone, to include telephone numbers and subscriber information (published and non-published) associated with these service changes.

16. Applicant further requests, pursuant to 18 U.S.C. § 3123(d), the Court direct the local, long distance and wireless carriers listed in the proposed order, and any other local, long distance or wireless carrier is obligated by the order to provide assistance to the Drug Enforcement Administration not to disclose in any manner, directly or indirectly, by any action or inaction, to the listed subscriber(s) for the Target Telephone, the subscriber of the incoming calls to or outgoing calls from the Target Telephone, or to any other person, the existence of the Application, the resulting court order, in full or redacted form, or the investigation for any reason, except as required to execute the order, unless or until ordered by this Court.

WHEREFORE, IT IS REQUESTED this Court enter an ex parte order for a period of sixty (60) days, commencing upon the date of installation of the Pen/Trap, authorizing the installation and use of a Pen/Trap to collect the dialing, routing, addressing, and signaling information (including date and time) associated with communications to or from the Target Telephone.

IT IS FURTHER REQUESTED the order authorize agents of the Drug Enforcement Administration to acquire, during the same 60-day period, subscriber information for the numbers captured by the pen register and trap and trace.

IT IS FURTHER REQUESTED the order authorize agents of the Drug Enforcement Administration to acquire, during the same 60-day period, cell-site information for communications to and from the Target Telephone as well as the physical location of cellular tower(s) identified nearby.

IT IS FURTHER REQUESTED the order direct the Sprint Corporation to furnish the Drug Enforcement Administration forthwith all information, facilities and technical assistance

necessary to effectuate the order unobtrusively and with minimum interference to the services presently accorded the user of the Target Telephone.

IT IS FURTHER REQUESTED this Application and the anticipated order of this Court be filed under seal, and the Court direct Sprint Corporation not to disclose to any person the existence of this Application, the resulting order, or the investigation for any reason, except as required to execute the order, unless or until ordered otherwise by this Court.

I declare the foregoing is true and correct to the best of my belief and knowledge. Executed on April 25th, 2014.

Respectfully submitted,

Tammy Dickinson
United States Attorney

By _____

Gary Milligan
Assistant United States Attorney

Sworn to before me and subscribed in my presence at Springfield, Missouri, this 25th day of April, 2014.

_____
HONORABLE DAVID P. RUSH
United States Magistrate Judge
Western District of Missouri

12